# Exhibit 2

# AMENDED AND RESTATED
# OPERATING AGREEMENT
# OF
# SKALAR PHARMA LLC

This Amended and Restated Operating Agreement (this "Agreement") effective as of November 16, 2021 (the "Effective Date") constitutes the Amended and Restated Operating Agreement of Skalar Pharma LLC, a Puerto Rico limited liability company (the "Company"). This Agreement and the Certificate of Formation of the Company shall be binding on all present and future members of the Company.

## RECITALS

**WHEREAS**, the Company was formed as a Puerto Rico limited liability company under the Puerto Rico General Corporations Act, as amended, on June 25, 2018;

**WHEREAS**, the Company executed its first Operating Agreement on July 12, 2018 pursuant to which Bioapi S.A.S. was named the sole member of the Company;

**WHEREAS,** Biopai S.A.S. has transferred all of its ownership interest in the Company to Skalar Pharma Holding LLC (the "Sole Member") by virtue of that certain Contribution Agreement executed by and between Bioapi S.A.S. and the Sole Member on the date hereof;

**WHEREAS,** the Sole Member desires to adopt and enter into this Agreement in order to set forth the new ownership structure of the Company, and the rules, regulations and provisions regarding the management and business of the Company, the governance of the Company and the conduct of its business.

**NOW, THEREFORE**, the party hereto adopts this Agreement and agree as follows:

## ARTICLE I
## DEFINITIONS

All capitalized terms contained in the introductory paragraph and the Recitals to this agreement have the meanings assigned to them therein. In addition, as used herein the following terms have the following meanings:

"Act" means the Puerto Rico General Corporations Act of 2009, as amended from time to time during the term of the Company.

"Affiliate" means, with respect to the Member, any Person who: (i) directly or indirectly controls, is controlled by, or is under common control with the Member; (ii) owns or controls 10% or more of the outstanding voting securities of the Member; (iii) is an officer, director, partner or trustee of the Member; or (iv) if the Member is an officer, director, partner or trustee, is any company for which the Member acts in any such capacity.

"Certificate of Formation" means the Certificate of Formation of the Company filed with the Office of the Secretary of State of the Commonwealth of Puerto Rico, as such certificate may be amended from time to time.

"Company Expenses" means all actual, out-of-pocket costs and expenses incurred in the ordinary course of the Company's business (A) to operate, manage, administer, terminate, and wind down the

1

Company and/or (B) to originate and underwrite the Company's investments, in each case, as of the Effective Date, including (i) fees for bookkeeping, accounting, legal and other similar services relating to the affairs of the Company (including without limitation, the annual audit of the Company, the preparation of annual and interim financial statements and the preparation of tax returns), (ii) costs and expenses associated with communications between the Company and the Member, and (iii) expenses for telephone, telegram, cablegram, telegraph, facsimile, internet and similar charges.

"Member" means the Sole Member or any other Person admitted as a member, or any successor or assignee of such Person admitted as a member to the Company in accordance with Article VII.

"Members" shall collectively refer to the Sole Member, and any other Person admitted as a member, or any successor or assignee of such additional Person admitted as a member to the Company in accordance with Article VII.

"Person" means any individual, general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative, association, foreign trust, foreign business organization, or other entity recognized as legally distinct for any purpose, and the heirs, executors, administrators, legal representatives, successors, and assigns of such "Person" where the context so permits.

"Sole Member" means Skalar Pharma Holding LLC.

## ARTICLE II
## ORGANIZATION

Section 2.1   Formation. The Certificate of Formation was filed with the Secretary of State of the Commonwealth of Puerto Rico on June 25, 2018. Except as stated in this Agreement, the Act, and the Certificate of Formation shall govern the rights and liabilities of the Member.

Section 2.2   Name. The name of the Company is Skalar Pharma LLC, and the business of the Company shall be conducted under that name or such other name or names as may be approved by the Member from time to time.

Section 2.3   Principal Office. The principal office of the Company shall be located at 83 Carr. 53 Km. 82, Barrio Jobos, Guayama, Puerto Rico 00785, or at such other place or places in the United States as the Member may from time to time determine.

Section 2.4   Term. The term of the Company commenced as of the date the Certificate of Formation was filed with the Secretary of State of the Commonwealth of Puerto Rico, and shall be perpetual, unless the Company is dissolved by law or in accordance with the provisions of this Agreement.

Section 2.5   Registered Agent and Office. The Company shall maintain a registered office and a designated and duly qualified agent for service of process on the Company in the Commonwealth of Puerto Rico. The Company may maintain offices at such locations as the Member deem advisable. The Member may change the registered office or registered agent by filing the address of the new registered agent's office and/or the name of the new registered agent with the Secretary of State of the Commonwealth of Puerto Rico pursuant to the Act.

Section 2.6   Limitation on Liability. The Member shall not be liable under a judgment, decree, or order of the court, or in any other manner, for a debt, obligation or liability of the Company. The Member shall not be required to loan any funds to the Company.

# ARTICLE III
## PURPOSES AND POWERS OF THE COMPANY;
## NATURE OF THE BUSINESS OF THE COMPANY

Section 3.1  <u>Purposes</u>.  The purpose of the Company is to transact any and all lawful business for which limited liability companies may be organized under the Act.

Section 3.2  <u>Powers</u>.  In order to carry out its purpose, the Company is authorized in furtherance of the Company business and subject to the other provisions of this Agreement to exercise all powers that a limited liability company may exercise under the Act.

# ARTICLE IV
## MANAGEMENT

Section 4.1  <u>Management</u>.  The Company shall be managed by the Member. The Member shall be responsible for conducting all of the business and affairs of the Company.

Section 4.2  <u>Powers of Member</u>.

(a)  The Member shall have full, complete and exclusive discretion to manage and control the business of the Company, and shall carry out the purpose of the Company as set forth in <u>Section 3.1</u>. The Member shall devote such time as is necessary to the affairs of the Company and shall receive no compensation therefor from the Company other than as expressly provided herein.

(b)  All decisions made for and on behalf of the Company by the Member shall be binding upon the Company. Subject to the provisions of this Agreement, the Member shall have the right, power and authority, acting for and on behalf of the Company, to do any and all things necessary to effectuate the purpose of the Company. No Person dealing with the Member shall be required to determine its authority to make any undertaking on behalf of the Company, or to determine any facts or circumstances bearing upon the existence of such authority.

Section 4.3  <u>Member Liability for Acts and Omissions; Indemnifications; Member Authority</u>. The Member and its Affiliates shall have no liability to the Company or to any Member for any loss suffered by the Company or any Member that arises out of any action or inaction of the Member or its Affiliates if the Member, in good faith, determined that such action or inaction was in the best interest of the Company and the Members and such action or inaction did not constitute gross negligence, fraud, or willful misconduct of the Member or its Affiliates. The Company shall indemnify the Member and its Affiliates against any losses, judgments, liabilities, expenses and amounts paid in settlement of any claims sustained by them in connection with actions taken by the Member authorized by this Agreement, provided that the same were not the result of gross negligence, fraud, or willful misconduct on the part of the Member or its Affiliates.

Section 4.4  <u>Limitation on Liability of Members</u>.  Except as otherwise provided in this Agreement, the liability of a Member for the liabilities of the Company shall be limited to its capital contributions as and when it is payable under the provisions of this Agreement. A Member shall not have any other liability to contribute money to, or in respect of the liabilities or obligations of, the Company nor shall any Member be personally liable for any obligations of the Company. A Member shall not be obligated to make loans to the Company.

Section 4.5  <u>Other Activities</u>.  A Member may engage in or possess interests in other business ventures of every kind and description for its own account, including without limitation serving as

managing or non-managing members or limited or general partners of other companies or partnerships (or other similar capacities) that lend to or invest in, either directly or through interests in other companies or partnerships, real estate or other businesses. Neither the Company nor any Member shall have any rights by virtue of this Agreement in or to such business ventures or to the income or profits derived therefrom.

Section 4.6    Company Expenses.    The Member shall pay on the Company's behalf the Company Expenses.

## ARTICLE V
## CAPITAL CONTRIBUTIONS

Section 5.1    Capital Contributions.    On the Effective Date, the Sole Member shall make the capital contribution as set forth on Exhibit A.

Section 5.2    No Other Capital Contributions.    Except as set forth in Section 4.6 the Member will not be required to make any contribution to the capital of the Company in excess of the amount set forth in Section 5.1 and when all or a portion of such capital contribution is returned to it, the Member shall have no obligation to re-contribute such funds to the Company.

## ARTICLE VI
## ALLOCATIONS AND DISTRIBUTIONS

Section 6.1    Allocations of Profits and Losses.    All profits and losses will be allocated to the Member.

Section 6.2    Use of Company Funds.    Funds received by the Company from operations (excluding any capital contribution and proceeds of any loans to the Company) shall be applied and distributed in the following priority:

(a)    *first*, to the Member in the amount of any expenses incurred by the Company (or the Member on behalf of the Company) that are not Company Expenses;

(b)    *second*, to the extent not previously paid, (i) to the payment of any Company Expenses incurred by the Company, and (ii) to fund any reserves the Member deems reasonably necessary or desirable for future expenses of the Company; and

(c)    *thereafter*, to the Member at such time and in such amounts as determined by the Member.

## ARTICLE VII
## TRANSFER OF RIGHTS AND ADDITIONAL MEMBERS

Any Member may assign or otherwise transfer all or part of any of the Member's interest in the Company and, unless the Member upon assignment provides otherwise, the assignee shall become a Member immediately.

## ARTICLE VIII
## TAX STATUS

The Member hereby intends, while there is only one member, that the Company's existence shall be disregarded for tax purposes pursuant to Section 301.7701-3(b)(1)(ii) of the Treasury Regulations, and

4

the Company shall take no actions to the contrary.

## ARTICLE IX
## DISSOLUTION

Section 9.1   Events Causing Dissolution. The Company shall be dissolved on the earlier of the expiration of the term of the Company, or upon:

(a)   the election by the Member(s); or

(b)   the entry of a decree of judicial dissolution under the Act.

Section 9.2   Winding Up. Upon dissolution, the Member shall wind up the Company's affairs. The liquidation shall take place without the appointment of a liquidator. Upon the determination to dissolve the Company pursuant to Section 9.1, (a) a certificate of dissolution shall be filed with the Secretary of State of the Commonwealth of Puerto Rico, and (b) the Company business shall be wound up and its assets liquidated by the Member in accordance with the Act and the net proceeds of such liquidation shall be distributed in accordance with Section 9.3.

Section 9.3   Distribution of Assets. Upon the winding up of the Company, the assets of the Company, after paying or providing for Company liabilities, shall be distributed to the Members.

## ARTICLE X
## MISCELLANEOUS

Section 10.1   Amendments. This Agreement and the Certificate of Formation may be amended at any time upon written consent of the Members.

Section 10.2   Successors and Assigns. Each and all of the covenants, terms, provisions and agreements herein contained shall be binding upon and inure to the benefit of the party hereto and, to the extent permitted by this Agreement, its successors and assigns.

Section 10.3   Applicable Law. THIS AGREEMENT AND ITS INTERPRETATION SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE COMMONWEALTH OF PUERTO RICO, AND SPECIFICALLY THE ACT, AS AMENDED FROM TIME TO TIME DURING THE TERM OF THE COMPANY, WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS.

Section 10.4   Electronic Signatures. Delivery of a signature page to this Agreement by telecopier, facsimile machine, portable document format ("PDF"), Electronic Signature (as defined below) or other electronic means shall be as effective as delivery of a manually executed signature page to this Agreement. The effectiveness of any such document and signature shall, subject to applicable laws, have the same force and effect as manually signed originals and shall be binding on the party(ies). No party may raise the use of a telecopier, facsimile machine, PDF or other electronic means, or the fact that any signature was transmitted through the use of a telecopier, facsimile machine, PDF or other electronic means, as a defense to the enforcement of this Agreement. "Electronic Signature" means any symbol or process attached to a document or instrument and executed or adopted by a person with the intent to sign the document or instrument, including, without limitation, any digital representation of a party's signature created by scanning such party's signature or by any electronic signature service such as DocuSign.

Section 10.5   Severability. If any provisions contained in this Agreement or any document

executed in connection herewith shall be held or otherwise determined to be invalid, illegal or unenforceable in any respect, under any applicable law, the validity, legality and enforceability of the remaining provisions contained herein shall not, in any way, be affected or impaired, and such illegal, invalid or unenforceable provisions shall be replaced by other provisions in accordance with the purpose and meaning of this Agreement.

Section 10.6 <u>Limitation on Benefits of this Agreement</u>. This Agreement is made solely for the benefit of the Member and its respective permitted successors and assigns, and except as may otherwise be expressly provided herein, no other Person shall have or acquire any right by virtue of this Agreement. Nothing in this Agreement shall be deemed to create any right or benefit for any creditor of the Company or any other Person that is not a party hereto, and this Agreement shall not be construed in any respect to be for the benefit of any creditor of the Company or any other Person that is not a party hereto.

(SIGNATURE PAGE FOLLOWS)

IN WITNESS WHEREOF, the undersigned has executed and delivered this Amended and Restated Operating Agreement as of the Effective Date.

**MEMBER:**

**SKALAR PHARMA HOLDING, LLC**

By: _____
Name: Fernando Londoño Benveniste
Title: Authorized Representative

# EXHIBIT A

## CAPITAL CONTRIBUTIONS

As of November 16, 2021

| **MEMBER** | **CAPITAL CONTRIBUTION** | **PERCENTAGE OWNERSHIP INTEREST** |
|---|---|---|
| Skalar Pharma Holding LLC | $1,000.00 | 100% |